UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DENNIS K. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-130-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Dennis K. Taylor seeks review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) failing to give good reasons for discounting a state-agency consultative examiner, (2) failing to build a logical bridge between the Plaintiff's impairments and his residual functional capacity, and (3) discounting the Plaintiff's credibility for inappropriate reasons.

**BACKGROUND**

On September 10, 2013, the Plaintiff filed his Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on August 26, 2013. (R. 18.) His claims were denied initially and upon reconsideration. (*Id.*) On October 19, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Scott Silver, a

vocational expert (VE), and the Plaintiff's wife appeared and testified at the hearing. (*Id.*) On January 5, 2016, the ALJ denied the Plaintiff's application, finding he was not disabled as of his alleged onset date. (R. 18–26.) On February 2, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On April 3, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since his alleged onset date, August 26, 2013. (R. 20.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under §§ 404.1520(c) and 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including fibromyalgia, obesity,

osteoarthritis in both knees, and degenerative changes in the cervical and lumbar spine. (*Id.*) The ALJ thus found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. The ALJ found that the Plaintiff's other impairments, including hypertension, liver problems, and heartburn, were non-severe. (R. 21.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," (§§ 404.1520(a)(4)(iv), 416.920(A)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to:

> [S]it for a total of 6 hours and stand/walk a total of 2 hours in an eight-hour period and lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He is not able to climb ladders, ropes, or scaffolds at all and he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must also avoid concentrated exposure to hazards, such as unguarded machinery and unprotected heights.

(R. 21.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 22.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified that he needs a partial left knee replacement, weather changes worsen his pain, his left knee gives out on him multiple times per month, he becomes stiff quickly, he needs a stool when he cooks, and he is able to sit for only 10 minutes at a time, stand for only 5–10 minutes at time, walk for only 10–15 minutes at a time, and lift only 5–6 pounds. (*Id.*) He also stated that he is afraid of tripping, can drive only short distances, must sit down to rinse dishes, must move around during church services, spends most of his days lying down and has difficulty sleeping, and almost always uses a cane. (*Id.*)

The ALJ looked to the objective medical evidence and noted that there was no evidence that the Plaintiff had undergone spinal surgeries, that there was no imaging study that would suggest central canal or neuroforaminal stenosis in his back and neck, no documentation that he was ever advised he needed surgery for his right knee, and no evidence that the Plaintiff was ever prescribed a cane. (R. 22–23.) The ALJ noted that there was no evidence to show that it was medically necessary for the Plaintiff to lie down most of the day, no documentation that that he had any muscle atrophy, "which might reasonably be seen if the claimant were as inactive as he alleged," and no evidence that any side effects of his medication could not be adequately managed. (R. 23.) The ALJ further found that the Plaintiff's examination findings were largely within normal limits. (*Id.*)

4

The ALJ then turned to the various opinions of medical professionals regarding the Plaintiff's limitations. The ALJ assigned little weight to an August 2013 opinion by treating physician Dr. Lazoff because Dr. Lazoff opined only that the Plaintiff should be off work until the completion of other medical workups. (R. 24.) The ALJ also afforded little weight to state agency examining physician Dr. Kamineni who found that the Plaintiff could sit for only 15–20 minutes, stand for only 15–20 minutes, walk just 10–15 minutes, lift and carry only 10 pounds for short period, and perform fine finger manipulations and handle objects with difficulty with his left hand. (*Id.*) The ALJ reasoned that the Plaintiff did not have "any reflex or sensory deficits," had not "exhibited any muscle atrophy or marked loss of muscle strength on a sustained basis," and "the only report of loss of grip strength was from Dr. Kamineni." (*Id.*)

The Plaintiff has past relevant work as a maintenance mechanic (skilled, heavy work) and department store manager (skilled, medium work). (*Id.*) The ALJ therefore found that the Plaintiff was unable to perform past relevant work. However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act. (R. 25–26.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus,

the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be

affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) failing to give good reasons for discounting a state-agency consultative examiner, (2) failing to build a logical bridge between the Plaintiff's impairments and his RFC, and (3) discounting the Plaintiff's credibility for inappropriate reasons.

In order to evaluate the Plaintiff's claim, the Social Security Administration retained Dr. Kamineni to examine the Plaintiff in 2014. After the examination, Dr. Kamineni opined that the Plaintiff could sit for only 15–20 minutes, stand for only 15–20 minutes, slowly walk for only 10–15 minutes, lift and carry only 10 pounds only for short periods, and perform fine finger manipulations and handle objects with difficulty with his left hand. (R. 360.) However, the ALJ rejected these findings, reasoning:

> [T]he claimant does not have any reflex or sensory deficits and he has not exhibited any muscle atrophy or marked loss of muscle strength on a sustained basis and the only report of loss of grip strength was from Dr. Kamineni; this was not seen elsewhere in the medical evidence of record, much less on a regular or consistent basis.

(R. 24.)

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record . . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Further, "rejecting or discounting the opinion of the agency's own

7

examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "It is unusual . . . for an ALJ to reject an examining [agency] doctor's opinion because doctors hired by the agency are unlikely to be biased toward claimants the way treating physicians may be, and they are unlikely to exaggerate a claimant's disabilities." *Lear v. Comm'r of Soc. Sec.*, No. 2:14-cv-307, 2016 WL 1165682, at *3 (N.D. Ind. Mar. 24, 2016) (first citing *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013), then citing *Beardsley*, 758 F.3d at 839). "Although an ALJ is not required to accept the views of an agency examining physician if there is a contrary opinion from a later reviewer or other compelling evidence, the ALJ still must have a good explanation for rejecting or discounting the examining physician's opinion." *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015); *see also Andrews v. Colvin*, No. 15 C 7192, 2016 WL 4905671, at *6 (N.D. Ill. Sept. 15, 2016) ("The fact that the ALJ rejected the opinions of two of the agency's own doctors is a red flag and a good explanation is required.").

In this case, "the ALJ gave hardly any explanation at all, let alone a valid one, for rejecting Dr. [Kamineni's] opinion." *Czarnecki*, 595 F. App'x at 642. The ALJ gives the following reasons for discounting Dr. Kamineni's opinion: (1) the Plaintiff did not have any reflex or sensory deficits; (2) the Plaintiff had not exhibited muscle atrophy or marked loss of muscle strength on a sustained basis; and (3) Dr. Kamineni was the only medical professional to report loss of grip strength in the Plaintiff's left hand.

As to the ALJ's first reason, the ALJ did not explain how the Plaintiff's apparent lack of reflex or sensory deficits somehow detracts from Dr. Kamineni's opinion regarding the amount of time the Plaintiff could sit, stand, or walk, lift and carry objects, and perform fine finger

8

manipulations. Next, the ALJ did not explain why the Plaintiff's apparent lack of muscle atrophy or "marked loss of muscle strength on a sustained basis" detracts from Dr. Kamineni's opinion. The ALJ noted that if the Plaintiff had to lie down as often as he claimed for extended periods of time, muscle atrophy would be expected. (R. 23.) There are at least two issues with this reasoning. First, the ALJ appears to be holding the *Plaintiff's* credibility against Dr. Kamineni's medical opinion that resulted from a physical examination of the Plaintiff. More importantly, the ALJ appears to be substituting her own medical judgment for that of Dr. Kamineni by determining that the Plaintiff was not as limited as Dr. Kamineni opined based on this lack of atrophy. Dr. Kamineni specifically noted in his report that the Plaintiff did not exhibit muscle weakness, yet he still found that the Plaintiff was subject to several limitations. (R. 359–60.) It is not for the ALJ to second guess the opinions of a medical professional based only on her own speculation as to what symptoms she would expect to see in conjunction with the limitations articulated by that medical professional. Finally, the ALJ has not explained why the fact that Dr. Kamineni—the examining state agency medical professional—was the only examiner to record decreased grip strength constitutes a good reason for discounting his opinion, especially considering that the ALJ did not point to any medical records that would contradict such a finding.

Therefore, the Court finds that the ALJ has failed to articulate good reasons for giving the state agency examining medical professional's opinion little weight and therefore did not build and accurate and logical bridge from the evidence to her conclusions, and the Court must remand this case.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on these issues, it need not address the remainder of the parties' arguments.

SO ORDERED on May 31, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
